UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X

LAWRENCE GELZER,

                Petitioner,

    -against-

BRIAN FISCHER, Commissioner NYS
Department of Correctional Services,

                Respondent.

----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

07 Civ. 2282 (BMC)

**COGAN,** District Judge.

This is a petition for a writ of habeas corpus under 28 U.S.C. §2254(d) in which petitioner, in state custody, seeks to vacate his guilty plea on the basis of ineffective assistance of trial counsel. The petition is dismissed.

## BACKGROUND

Petitioner was arrested in his home pursuant to a search warrant, and found to have possession of a small arsenal of loaded firearms. He was charged with three counts of Criminal Possession of a Weapon in the Second Degree under the predecessor to N.Y. PENAL LAW 265.03(1)(b); Criminal Possession of a Weapon in the Third Degree under N.Y. PENAL LAW §265.02[1]; and Criminal Possession of a Weapon in the Fourth Degree under N.Y. PENAL LAW §265.01[1]. After his attorney's motion to dismiss the top count was denied, petitioner pled guilty to one count of Criminal Possession in the Second Degree in exchange for a five year sentence (the minimum of the 5-15 year determinate range), five years post-release supervision, and waiver of appeal.

At his plea allocution, petitioner acknowledged that he had not taken any medication, drugs or alcohol; that he had discussed the case with his lawyer; that he had possessed a loaded nine-millimeter pistol (one of the weapons seized) intending to use it against another; that he was guilty of the crime; that no one had forced or threatened him to plead; that he was waiving his constitutional right to trial and other attendant rights (which were specifically described, including the right to pretrial hearings and to challenge the admissibility of evidence at trial); and that the impact of his plea was the same as if it were a jury verdict. He acknowledged orally that he was waiving his right to appeal as part of the plea bargain, and also signed a written waiver to that effect.

Petitioner appealed anyway. The Appellate Division appointed counsel for him to do so, but counsel could find no error and filed an Anders brief.[1] Petitioner then filed his own supplemental brief and commenced a separate proceeding to vacate his conviction. He raised a number of points, but the primary point for purposes of the instant proceeding was ineffective assistance of counsel. He contended that his trial counsel had improperly advised him in the following respects: (1) advising him to plead guilty to second degree criminal weapons possession when, at most, he was guilty of third degree criminal weapons possession (the difference is that second degree carries an element of intent to use the weapon on another person); (2) failing to challenge the search warrant that led to his arrest; and (3) failing to assert a Brady claim for improper redaction of the search warrant materials.

---

[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396 (1967), permits appointed appellate counsel to withdraw if, after adequate investigation and consultation with a defendant, counsel considers an appeal to be wholly frivolous.

2

The Appellate Division agreed with his assigned counsel that there were no non-frivolous issues that could be raised on appeal, and affirmed the conviction on that basis. People v. Gelzer, 37 A.D.3d 492, 827 N.Y.S.2d 878 (2d Dep't 2007).

## DISCUSSION

### I. Standard of Review

Habeas corpus is available to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a new standard of review intended to "place[ ] a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399, 120 S.Ct. 1495, 1516 (2000).

A court reviewing a habeas petition under AEDPA may not grant a writ "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The two clauses of subsection (1) have "independent meaning." Williams, 529 U.S. at 364, 120 S.Ct. at 1498. Under the first clause, a state court decision will be considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme

3

Court] precedent." Id. at 405-06, 120 S.Ct. at 519-20 (O'Connor, J., concurring). Under the second clause, habeas relief may be granted if the state court decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08, 120 S.Ct. at 1520. Whether a state decision is an "unreasonable application" of federal law must be based on an objective standard and relief may not be granted unless a relevant state court decision is both erroneous and unreasonable. Id. at 409-11, 120 S.Ct. at 1521-22. "An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable." Yung v. Walker, 296 F.3d 129, 135 (2d Cir. 2002).

In reviewing findings of fact under AEDPA, federal courts must assess whether the state court's determination was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under this standard, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition, a state court need not set forth the legal basis for resolution of federal claims in order for the broadly deferential standard set out in AEDPA to apply. See Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001). Rather:

> [T]he plain meaning of § 2254(d)(1) dictates [that for] the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's

4

decision on the federal claim-even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Id. at 312.

AEDPA thus establishes a deferential standard of review: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411, 120 S.Ct. at 1495). The Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Id. at 93 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)) (internal quotation marks omitted).

AEDPA supplemented rather than displaced the pre-AEDPA Supreme Court authority as to the evaluation of habeas petitions challenging guilty pleas. The leading case remains Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602 (1973), where the Court held that the controlling issue in such cases is whether the plea was knowingly and voluntarily given. The Court made it clear that a petitioner may not obtain relief based on constitutional claims that he could have asserted had he not pled guilty:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [the range of competence required of attorneys in criminal cases.] A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable

5

constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts ... it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Id. at 267, 93 S.Ct. at 1608.

This procedural framework for evaluating habeas challenges to guilty pleas relied upon the substantive standards set in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441 (1970). There, the Court explained that the voluntariness of a defendant's plea "depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann, 397 U.S. at 771, 90 S.Ct. at 1449. McMann, in turn, was followed by the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), which provides the present standard under which ineffective assistance of counsel claims in connection with guilty pleas are to be evaluated. See Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366 (1985). In short, to determine whether petitioner's guilty plea was knowingly and voluntarily given as against a claim of ineffective assistance of counsel, a habeas court needs to determine whether the state court unreasonably applied Strickland.

To determine whether counsel's assistance was ineffective under Strickland, the Supreme Court requires application of a two-part test. See Strickland, 466 U.S. at 687-96, 104 S.Ct. at 2064-69. First, a habeas petitioner must show that his counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness," measured according to

6

"prevailing professional norms." Id. at 687-88, 104 S.Ct. at 2064-65. Second, the petitioner must affirmatively demonstrate prejudice. Id. at 694, 104 S.Ct. at 2068. Prejudice is rarely presumed, and so the petitioner generally must prove that "there is a reasonable probability that, but for counsel's [error], the result of the proceeding would have been different." Id. A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." Id. Courts accord considerable deference to counsel's performance, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104 S.Ct. at 2066.

In the context of a guilty plea, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370. Moreover, although the Supreme Court did not expressly state this in Hill, it implied that to demonstrate prejudice, petitioner must show not only that he would have gone to trial, but that he either would have been acquitted or, if convicted, sentenced to a lesser term than he received pursuant to his guilty plea. See id., 106 S.Ct. at 371 (quoting Evan v. Meyer, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial ... or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received.").

Of course, as with many ineffective assistance of counsel claims, some consideration of the underlying constitutional rights that have become irrelevant by reason of the petitioner's admission of guilt must be undertaken. This is because if trial counsel's failure to assert those rights was not objectively reasonable, and if the assertion of those rights would have yielded a

7

different result, then the plea would not have been entered into knowingly and voluntarily. Nevertheless, it bears emphasizing that the inquiry is not whether a petitioner's underlying constitutional claims have merit. Rather, it is whether his counsel acted within an objective range of reasonableness in advising his client to take the plea.

The burden on a petitioner is made even more difficult by the additional layer of deferential review under AEDPA accorded to the state court's decision. This combination of allowing a range of reasonableness for the quality of counsel's representation and the deference for state court adjudication of constitutional issues increases the difficulty of a petitioner's burden in challenging a properly allocuted guilty plea.

## II. Application

Applying the standard set forth above, petitioner is unable to meet either prong of the Strickland test. He can neither show that his counsel's advice to him to take the guilty plea was beyond an objective standard of reasonableness, nor that he was prejudiced by taking the plea. Indeed, even without the narrow standard of review described above, the result would not change. The Appellate Division correctly held that petitioner failed to present any non-frivolous claims.

### A. Sufficiency of the Evidence

Petitioner's primary accusation against his trial counsel is that petitioner should have been permitted to plead to criminal possession in the third degree instead of criminal possession in the second degree, the former of which carries a lighter sentence. The basis of petitioner's argument is that there was insufficient evidence that he intended to use the weapon against another person, which is a required element of the charge and the distinguishing element

8

between the two charges. Petitioner notes that unlike some cases, he was not caught actually using any of the weapons, and he points out that the weapons seized were in a room of his house in which he was not present (he was in the house but in another room). There are several problems with this argument.

First, petitioner has offered no indication that a plea agreement for third degree was or would have been offered. There is no basis to conclude that petitioner could have received a third degree plea. This means that petitioner has to show that he would have prevailed at trial on the second degree claim or at least received a lighter sentence, despite the fact that under his single count, second degree guilty plea, he received the minimum sentence. For this and other reasons explained below, that argument is not sustainable.

Second, petitioner expressly stated in his plea allocution that he intended to use the weapon against another person. He accuses the trial judge of tricking him into saying that, but my review of the transcript indicates that the only confusion was whether petitioner had to identify a specific individual against whom he intended to use the weapon, as opposed to, for example, intending to use it in the course of a robbery. The trial judge clarified that he did not have to identify a specific person, and then asked petitioner: "The basic question is, sir, did you have the gun with the intent to use it, if you needed to against somebody, yes or no?" Petitioner answered affirmatively. There was nothing tricky about the question.

Third, and perhaps more importantly, it is firmly established under New York law that there is a presumption of intent to use a weapon when it is found in a person's possession. See e.g. People v. Topsy, 265 A.D.2d 353, 696 N.Y.S.2d 470 (2d Dep't 1999); People v. Morrow,

261 A.D.2d 279, 690 N.Y.S.2d 541 (1st Dep't 1999). At no time during his state court proceedings to challenge his guilty plea did petitioner give any indication of how he would have overcome that presumption had he gone to trial. He seems to think that the mere fact that the weapons were in a different room from where he was arrested in his house – that his possession was constructive rather than actual – would have been sufficient to convince the jury that he had no intent to use them against anybody. Maybe he is right, but I think the odds were against him, and thus the advice to take the plea was within the range of reasonable counsel for his attorney to give, especially in exchange for the minimum sentence. Considering what was seized here – a .357 revolver, a .9mm pistol, and a .380 caliber pistol, all of which were loaded and operable, plus more than 200 rounds of ammunition – it is something of an understatement to say that petitioner's conclusion that he should have been allowed to plead to third degree, or that a jury would have acquitted him on all of the second degree counts, or even that he would not have pled guilty if he had better understood the difference between second and third degree, is not foregone. Even as late as the present habeas petition, petitioner has offered no explanation as to what it was exactly that he intended to do with these weapons, so we are left to speculate on how a jury would have found that he overcame the presumption.

Once again, however, it bears repeating that the test is not whether petitioner would have prevailed. It is whether his counsel was objectively reasonable in advising him to plead to a single second degree count, in exchange for the minimum sentence, because of the risk that he would not prevail. I find that counsel's advice was objectively reasonable, and I also find that the Appellate Division's conclusion to the same effect was not contrary to or an unreasonable application of Supreme Court authority.

Moreover, even if I were reviewing this claim as a challenge to the sufficiency of the evidence, it would come nowhere near the constitutional standard for habeas corpus relief for the same reasons. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (state criminal conviction will be upheld if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

### B. *Brady* claim

It is difficult to understand what petitioner is complaining about with regard to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). The record indicates that the prosecution made disclosure, redacting confidential, non-Brady information from the materials that it produced. The record further indicates that on two occasions, apparently at the behest of defense counsel, the trial court reviewed the redacted material *in camera* to determine if the redactions were proper and advised defense counsel that the redacted material was not Brady material, i.e., it had been properly redacted. I do not see any further action defense counsel could or should have taken. Whether viewed as part of his ineffective assistance claim or an independent claim for a Brady violation, there is no conceivable constitutional violation here.

### C. *Search Warrant*

In asserting that the search warrant that led to his arrest was fatally defective, petitioner raised what appears to be a technical point in state court having to do with a statement filed in support of the warrant. Although he acknowledges that the witness was sworn, he points to the fact that the witness was not advised that the swearing of a false statement in connection with a search warrant could lead to prosecution. He relies on N.Y. PENAL LAW §210.45, which makes a

false written statement punishable as a misdemeanor if the written statement bears "a legally authorized form notice to the effect that false statements made therein are punishable." Because there is no indication that the witness received this advice, petitioner claims that the search warrant was invalid, and the guns had to be suppressed. Like his other points, petitioner raises this point either as a challenge to the effectiveness of his trial counsel, who did not seek suppression, or as an independent attack on the constitutionality of the search and therefore the voluntariness of his guilty plea, or both.

The argument is frivolous. Even if I assume that the failure of a complaining witness to execute his oath in precise conformance with state statutory requirements raises a Fourth Amendment issue cognizable on habeas review (which I doubt), PENAL LAW §210.45 does not immunize perjurers who are not advised of their exposure under it. Rather, it extends the ability of the state to prosecute dissemblers by providing that even if a written statement submitted to a governmental agency is not sworn before a judge or notary, the signatory may still be prosecuted for making a false statement *if* the unsworn statement warns him of that possibility. Cf. People v. Bromley, 85 Misc.2d 988, 990, 381 N.Y.S.2d 965, 967 (Nassau County Court 1976) ("use of a form notice that false statements may be punished is authorized by the Criminal Procedure Law as an alternative method of verifying accusatory instruments").

A witness who gives a false statement to a judge after swearing to its truth is of course subject to prosecution for perjury and needs no warning to have that exposure. See N.Y. PENAL LAW §210.05 et seq. Since petitioner acknowledges that the witness in question was asked by the Court "Do you swear to the truth of the testimony you're about to give?" and the witness responded, "Yes, sir," there is no merit to petitioner's claim, whether viewed as an ineffective

12

assistance claim for not moving to suppress or as its own Fourth Amendment claim going to the voluntariness of his guilty plea.

## CONCLUSION

The petition is dismissed. The Clerk is directed to enter judgment. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; <u>Middleton v. Attorneys Gen. of New York and Pennsylvania</u>, 396 F.3d 207 (2d Cir. 2005) (per curiam); <u>Ludicore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-13 (2d Cir. 2000). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. See <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S.Ct. 917 (1962).

**SO ORDERED.**

s/Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
November 14, 2007